Nancy J. Arencibia Bar Id# 035431997
Bianca M. Olivadoti Bar Id # 112962014
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07925
(908) 795-5200
ATTORNEYS FOR DEFENDANT KIPP: NEW JERSEY, INC. (improperly pled as "KIPP New Jersey")

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILICIA DAVIS,<br><br>            Plaintiff,<br><br>v.<br><br>TEAM ACADEMY CHARTER SCHOOL, KIPP NEW JERSEY, DAVID BRANSON, JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>            Defendants. | Civil Action No.<br><br>**NOTICE AND PETITION FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, ESSEX COUNTY** |

TO:   William T. Walsh, Clerk of Court
U.S. District Court, District of NJ
M.L. King, Jr. Federal Bldg. & U.S.
Courthouse
50 Walnut Street
Newark, NJ 07102

Ty Hyderally, Esq.
Hyderally & Associates P.C.
33 Plymouth Street, Suite 202
Montclair, NJ 07042

Defendant, KIPP: NEW JERSEY, INC. (improperly pled as "KIPP New Jersey") ("KIPP NJ"), pursuant to 28 U.S.C. §§ 1331, 1442 and 1446, respectfully submits this notice and petition for removal of a case from the Superior Court of New Jersey, Law Division, Essex County, Docket No. ESX-L-005173-20, and, as grounds for removal, alleges as follows:

1.      On or about August 3, 2020, Plaintiff Philicia Davis ("Plaintiff") filed a civil action captioned <u>Philicia Davis v. Team Academy Charter School, KIPP New Jersey, David Branson, John Does 1-10, and XYZ Corp. 1-10</u>, Docket No. ESX-L-005173-20, in the Superior

Court of New Jersey, Law Division, Essex County. A true and correct copy of the Complaint in that action is attached hereto as Exhibit A.

2.     KIPP NJ acknowledged service of the summons and complaint on September 11, 2020. The summons and complaint were the initial pleadings received by KIPP NJ setting forth the claims upon which Plaintiff's action is based.

3.     This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446, as KIPP NJ has effected removal within thirty (30) days of receipt by it of a paper from which it could first be ascertained that this action is removable. See 28 U.S.C. § 1446.

4.     All Defendants to this action consent to the filing of this notice and petition for removal.  (See Exhibit B).

5.     No proceedings have taken place in the state court action.  KIPP NJ has not served an answer or responsive pleading to Plaintiff's Complaint or made any appearance or argument before the Superior Court of New Jersey.

6.     In the Complaint, Plaintiff alleges, *inter alia*, that Defendants violated her rights under the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  (See Exhibit A, Complaint, Counts VI and VIII)

7.     Accordingly, this action is removable to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1331, by virtue of its federal question jurisdiction arising out of Plaintiff's claims under the EPA and FLSA.

8.     Pursuant to 28 U.S.C. §1441(a), this action may be removed to this Court because it is founded, in part, on claims or rights arising under the laws of the United States.

9.     Pursuant to 28 U.S.C. §§ 1367 and 1441(c), this Court has supplemental jurisdiction over Plaintiff's additional causes of action: disability discrimination in violation of the

New Jersey Law Against Discrimination (LAD); gender discrimination in violation of the LAD; retaliation in violation of the LAD; gender pay disparity in violation of the Diane B. Allen Equal Pay Act ("NJ EPA"); retaliation in violation of the NJ EPA; and a violation of the New Jersey Wage Payment Law. (See Exhibit A, Complaint, Counts I-V and VII).

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

11.     KIPP NJ files this Notice of Removal without waiving any defense to Plaintiff's claims or conceding that Plaintiff has pled claims upon which relief can be granted.

12.     Pursuant to 28 U.S.C. § 1446(d), KIPP NJ has given written notice of the removal of this action to all adverse parties and has filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Essex County.

**WHEREFORE**, KIPP NJ respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Essex County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.

By:     *s/ Nancy J. Arencibia*
        Nancy J. Arencibia
        Bianca M. Olivadoti
        ATTORNEYS FOR DEFENDANT KIPP: NEW
        JERSEY, INC. (improperly pled as "KIPP New
        Jersey")

Dated: October 9, 2020

4830-5273-4410, v. 1

# EXHIBIT A

**Ty Hyderally, Esq. (Atty. ID No.: 023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff: Philicia Davis

| | |
|---|---|
| **PHILICIA DAVIS,** <br><br> **PLAINTIFF,** <br><br> **VS.** <br><br> **TEAM ACADEMY CHARTER SCHOOL, KIPP NEW JERSEY, DAVID BRANSON, JOHN DOES 1-10, AND XYZ CORP. 1-10,** <br><br> **DEFENDANTS.** | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: ESSEX COUNTY <br> DOCKET NO.: <br><br> CIVIL ACTION <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, Philicia Davis ("Davis" or "Plaintiff") who currently resides at 220 Meadow Lane, Apt. D11, Secaucus, NJ 07094, by way of this Complaint against the Defendants, Team Academy Charter School, KIPP New Jersey, (collectively "Corporate Defendants"), David Branson ("Branson"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby says:

## I. Nature of Action, Jurisdiction, and Venue

1.      This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.,* ("LAD") (disability discrimination); (2) a violation of the LAD (gender discrimination); (3) a violation of the LAD (retaliation); (4) violation(s) of the Diane B. Allen Equal Pay Act, N.J.S.A. 34:11-56.13, amending N.J.S.A. 10:5-12(11) ("New Jersey Equal Pay Act") (gender pay disparity); (5) violations of the New Jersey Equal Pay Act (retaliation); (6) violation(s) of the Equal Pay Act, 29 U.S.C.S. § 206(d); (7) a

1

violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.*; and (8) a violation
of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA").

2.      This court has jurisdiction due to the nature of the action and the amount in controversy.
Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3.      Venue is appropriate in this court since Plaintiff worked for Corporate Defendants in Essex
County, Defendants were located in and did business in Essex County during the relevant time
period, and the causes of action accrued in Essex County, New Jersey.

## II. Parties

4.      Davis, who is female, was an Assistant School Leader and Principal in Residence for
Corporate Defendants, whose business address is 60 Park Place, #802, Newark, New Jersey 07102.

5.      Davis was assigned to work at KIPP Newark Community Prep, located at 18 Norfolk
Street, Newark, New Jersey 07103.

6.      Plaintiff was an employee of the Corporate Defendants and performed job related duties in
the State of New Jersey.

7.      During the relevant time period, Branson was the School Leader/Principal at KIPP Newark
Community Prep.

8.      Thus, Branson was a senior management level employee who controlled Plaintiff's
workplace and supervised Plaintiff and (1) aided the employer in performing a wrongful act that
caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the
time he provided assistance; and (3) knowingly and substantially assisted the employer in the
principal violation of the statutes referenced herein.

9.      During the relevant time period, JOHN DOES 1-10 are currently unknown employees who
were either senior management level employees who controlled Plaintiff's workplace, and
supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein
and/or who either acted within the scope of their employment at the workplace during working
hours, or, to the extent they went beyond the scope of their employment, Corporate Defendants
ratified, embraced and added to his conduct.  As the parties engage in discovery, Plaintiff retains
the right to amend the Complaint to add these individual employees by name.

10.     During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein.  As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

11.     Thus, all Defendants are subject to suit under the statutes alleged above.

12.     At all times referred to in this Complaint, employees of the Corporate Defendants, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the corporate defendants ratified, embraced and added to their conduct.

### III. Factual Allegations

13.     In 2016, Davis was diagnosed with Celiac Disease and Crohn's Disease while living in the state of California.

14.     On or about March 19, 2019, Davis was offered the position of Assistant School Leader and Principal in Residence at KIPP Newark Community Prep located at 18 Norfolk St., Newark, New Jersey 07103 at a starting salary of $105,000/annum.

15.     Davis accepted the offer.

16.     On May 9, 2019, Davis wrote to Noel Mullen, a member of the Events Design and Operations Team ("Mullen") to request accommodations for her serious food allergies when she was attending the KIPP School Leadership Programming (KSLP) at Roosevelt University in Chicago from June 23, 2019 through July 12, 2019, as part of her mandatory training to work for the Corporate Defendants. (Exhibit "1").

17.     On May 16, 2019, Davis filled out a survey related to KSLP and noted that she needed the accommodation of a private bathroom and a restricted diet as she suffered from Celiac Disease and Crohn's Disease.  Davis further advised that she was allergic to gluten and was a vegetarian.

18.     Mullen responded on May 17, 2019, with the contractual representation that a private bathroom would be offered as well as that "the dining room is a food court that offered a variety of options." (Exhibit "1").

19.     With this exchange as a backdrop, Davis agreed to work for Defendants and offered to provide medical documentation to support her requests.

3

20.     Subsequently, Davis was required to attend a mandatory Leadership Team Meeting at KIPP on May 23, 2019 which lasted 3 hours and required Davis to drive from Connecticut to Newark and then back to Connecticut.

21.     Branson further informed Davis that she would be reimbursed for all travel costs for her to attend this meeting.

22.     Davis then submitted her expenses for reimbursement on June 3, 2019 in the amount of $294.65. (Exhibit "2").

23.     Defendants failed to pay Davis for attending the meeting that lasted 3 hours and failed to pay her for expenses she suffered to attend the meeting.

24.     In addition, Defendants failed to pay Davis for work assigned to her at the May 23, 2019 meeting, which amounted to 2 hours of work that she completed a few days after the meeting.

25.     Branson also advised all staff, including Davis, that they had to be on a mandatory conference call on June 5, 2019, that was titled NCP Check-in #1.

26.     Thus, Davis participated on the 1 ½ hour conference call on June 5, 2019.

27.     Defendants did not compensate Davis for this phone call.

28.     Additionally, Davis spent approximately 2 hours to perform the work she was assigned by Defendants on June 5, 2019.

29.     Defendants did not compensate Davis for this work.

30.     On June 10, 2019, Davis began her daily work as the Assistant School Leader and Principal in Residence.

31.     Upon hire, Branson and Nicole Sherrin, Assistant Superintendent ("Sherrin") informed Davis that she and Ira Griffith ("Griffith") were to be co-leaders and Assistant Principals at KIPP Newark Community Prep.

32.     Davis and Griffith participated in two programs together: Miles Family Fellowship and Principal in Residence KIPP New Jersey.

33.     As noted above, Davis was required to attend the KIPP School Leadership Programming (KSLP) at Roosevelt University in Chicago from June 23, 2019 through July 12, 2019.

34.     Davis selected food that was labeled gluten free and got sick.

35.     When Davis spoke to the food service workers, they admitted that foods were prepared in the same pans and thus there was cross contamination between gluten and gluten free foods.

4

36.     Thus, Defendants violated their statutory obligation to accommodate Davis due to her disability as there was no gluten free food available.

37.     On June 24, 2019, Davis brought this to the attention of Teresa Velasquez ("Velasquez"), Senior Manager, Event Design and Operations Team, and noted that her disability of suffering from Crohn's disease was getting aggravated. (Exhibit "3").

38.     Velasquez forwarded the email to Mullen. Mullen and Davis then had interaction where Davis discussed her Celiac condition and the impact of eating non-gluten foods. (Exhibit "3").

39.     Subsequently, Davis had to purchase food due to the situation and requested reimbursement from Sherrin on July 12, 2019. (Exhibit "4").

40.     On July 31, 2019, Davis sent Sherrin her receipts for meal reimbursement. Sherrin directed Davis to include Jeffrey Weber, Director of Campus Operations ("Weber") on her request. (Exhibit "5").

41.     Davis emailed Weber on August 7, 2019 requesting reimbursement. (Exhibit "6").

42.     Sherrin and Weber advised that Team Academy KIPP would reimburse Davis $148.31 towards her meals.

43.     Despite this, neither Sherrin or Weber got back to Davis about her request for reimbursement, prompting Davis to follow up with Weber on December 9, 2019. (Exhibit "7").

44.     Additionally, Davis reached out to Ryan Gassaway, Director of Instructional Leadership Development and Miles Family Fellowship ("Gassaway"), who met with Davis, Mullen and Quinton Vance, Senior Relationship Manager ("Vance") on July 10, 2019. At that meeting, Davis advised that she would have to go home from the training because her dietary needs were not being met and her disabilities were being aggravated.

45.     On July 31, 2019, Davis sent Mullen her receipts for reimbursement. (Exhibit "8").

46.     Mullen advised Davis that she would be reimbursed $76.09 towards her meals.

47.     Corporate Defendants did not reimburse Davis for her meals in timely fashion.

48.     Davis returned from the Chicago training on July 13, 2019.

49.     After the Chicago training, in which her medical dietary needs were not properly accommodated, Davis required medical treatment for the allergies and resulting flare-ups.

50.     Defendants did not begin Davis' health benefits until August 14, 2019.

51.     Davis thus had to delay picking up prescriptions and meeting with a doctor until after August 14, 2019 as she did not have the resources to pay for her medical expenses out of pocket.

52.     The lack of accommodations at the KSLP Miles Fellowship Training as well as the delay in obtaining medical coverage caused great physical and emotional distress on Davis, who nevertheless performed her duties in an exemplary manner.

53.     Despite this, Defendants retaliated against Davis.

54.     On August 15, 2019 Branson called Davis to a meeting, in which Sherrin was also present, and asked Davis about her absence on August 13, 2019, despite the fact that Davis texted Branson at 6:14 AM to let him know she was feeling sick and did not want to potentially infect anyone at work. (Exhibit "9").

55.     When they met, Branson pointedly asked Davis, "Do you want to be here?"

56.     Davis was shocked and humiliated by Branson's questions and comments that clearly reflected a discriminatory animus against her for suffering from a disability and requesting accommodation due to her disability.

57.     Davis took note of this and also of the fact that there was inequitable treatment between Griffith and Davis.  Davis noted that despite the fact that Griffith and Davis had the same job title and responsibilities, Griffith was given more leadership opportunities than Davis because Davis was a woman.

58.     Branson dismissed Davis by merely stating that she and Griffith were co-leaders.  Branson ignored Davis' observation that Griffith was given more skill-development opportunities than Davis and that Davis felt that this occurred because of gender discrimination.

59.     Due to the negative interaction that Davis had with Branson, on August 20, 2019, she requested that they have a restorative conversation to work through the numerous issues that existed.

60.     Branson questioned the need for such a conversation.  Davis responded that she wanted to address the gender bias she felt existed due to preferential leadership opportunities given to males compared with females.

61.     Branson responded in a curt manner that Davis was being emotional and stated, "Women are not meant to be in leadership."

62.     Davis was upset that such a demeaning and sexist comment was made by the Principal of her school and stated that Branson's discriminatory comment proved why a restorative conversation was needed.

6

63.     Branson changed his demeanor and said that Davis misunderstood him as he meant to say that, "Not all women were meant to be in leadership."

64.     Subsequently, despite the fact that Branson responded affirmatively to Davis' request for a restorative conversation, he delayed doing so, which forced Davis to follow up. (Exhibit "10").

65.     Despite the fact that the meeting was finally scheduled to occur on August 30, 2019, Branson cancelled the conversation approximately 5 minutes before it was set to begin. (Exhibit "11").

66.     On September 24, 2019, Davis again complained to Branson that some of her leadership responsibilities and opportunities for growth, such as creating a schedule for the school, and leading team meetings, were being given to Griffith without justification.

67.     Branson dismissed Davis' concerns, merely responding that both Davis and Griffith were co-leaders.

68.     Unfortunately, the retaliatory treatment continued which resulted in Davis sending an email to Branson on October 4, 2019, noting that she was cut out of Leadership Team decisions. (Exhibit "12").

69.     Davis and Branson met on October 7, 2019, and Davis gave details of her claim of gender discrimination.

70.     Davis took note of the fact that she was not being allowed to build on her leadership skills because she was a woman, that Griffith was not being held to the same expectations as she was, and that Griffith was being encouraged to grow as a leader.

71.     In response, without any explanation as to why, Branson stated words to the effect of, "Your voice would not hold as much weight on the leadership team."

72.     Davis responded that Branson's comment reflected the gender discrimination she was complaining about. Branson merely told Davis to take the issue up with Human Resources.

73.     In retaliation for Davis' complaint of gender discrimination, the day after their meeting, Branson reduced Davis' leadership responsibilities, criticized her performance, and made false characterizations about Davis. (Exhibit "13").

74.     Davis realized that Branson would continue his path of retaliation and thus tried to soften her October 9, 2019 response by noting that his email was confusing. However, she did take note of the inequity in his actions and the fact that, "As a black woman, being silenced and asked to scale back my voice on LT felt oppressive and harmful to me." (Exhibit "14").

7

75.    On October 10, 2019, Davis met with Jasmin Apatow, Human Resources ("Apatow"), and complained of gender discrimination and retaliation and provided details. Apatow merely took notes and said she would get back to Davis, which she never did.

76.    Despite the fact that Davis made a formal gender discrimination and retaliation complaint, Apatow never got back in touch with her.  In fact, no one from Human Resources got back in touch with Davis to discuss her complaint.  To Davis' knowledge, no investigation or curative or remedial action occurred.

77.    Rather, Branson simply continued to engage in discriminatory and retaliatory action such as demanding that Davis apologize for something that was not her fault related to the lunch schedule.

78.    When Davis merely asked what she was supposed to apologize for, Branson yelled at her that she was to apologize to staff members immediately and then terminated the discussion.

79.    On November 7, 2019, Davis noted numerous concerns and asked Branson if they could meet to discuss equity of voice and decision-making. (Exhibit "15").

80.    Branson merely responded that such matters could be discussed in the weekly 03 meeting.

81.    On November 12, 2019, Davis was having a conversation with a fellow Administrator who stated that Griffith was making a salary of $115,000 a year.

82.    Davis was shocked to hear this, as she was receiving approximately 10% less in pay to perform the same work that Griffith performed, and they both had the same positional titles - Assistant School Leader.

83.    On or about November 15, 2019, Griffith went on paternity leave for two (2) weeks and Davis took on most of his workload, in addition to teaching math full-time and having other responsibilities.

84.    During that same time period, Davis met with Apatow to discuss her complaints of gender discrimination, equity in the workplace, difficulties in communication, and other items.  Similar to before, Apatow merely took notes and stated she would get back to Davis.

85.    Yet no investigation ensued and no curative or remedial measures were put in place.

86.    Instead, on December 17, 2019, Davis met with Branson, Lindsay Schambach, Director of Leadership Development ("Schambach") and Apatow at 4pm.

87.    Rather than discuss Davis' complaints of gender discrimination and retaliation, Schambach informed Davis that she did not have the skill set to meet the requirements for the Principal in

8

Residence Program. Branson stated that the school was restructuring, Griffith was to become the new Middle School Leader/Principal, Branson would be in charge of leading the high school, the generalist Assistant Principal role was eliminated, and Davis was no longer needed.

88.     Apatow asked Davis what she wanted in order to ease her transition and Davis responded that she did not want another black woman to be treated the way she was.

89.     Apatow asked Davis to return on December 18, 2019 to meet with her at 9:45 am.

90.     During this meeting, Apatow presented Davis with an unsolicited separation agreement containing a severance and general release of all claims. Exhibit "16".

91.     Davis had never been disciplined, before she was terminated.

92.     Davis had never been suspended, before she was terminated.

93.     Davis had never been demoted, before she was terminated.

94.     Defendants never put Davis on a performance improvement plan regarding her performance, before they terminated her.

95.     Defendants' termination of Davis is clearly not based upon any legitimate reasons, but rather, is due to their discriminatory animus against Davis, due to her disability and her gender, and Defendants' retaliatory animus against Davis for making complaints of discrimination.

96.     Davis has suffered severe emotional distress, anxiety and sleeplessness due to Defendant's discriminatory harassment, retaliation and termination.

97.     At the time of her termination, Davis was making an annual salary of $105,000. Further, Davis received accrued paid sick days, and company paid holidays, healthcare benefits, pension plan, 401(k) plan and other benefits. Upon information and belief, Griffith was paid a $15,000 signing bonus for the Middle School Leader/Principal position that, presumably, would have been offered to Davis if she was given the Middle School Leader/Principal position.

98.     These benefits of employment make up Davis' claim for damages.

### Count I
### (LAD – Disability Discrimination)

99.     Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

100.    The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by discriminating against Plaintiff due to Plaintiff's handicap and/or disability.

101.    Furthermore, upon information and belief, Defendants have engaged in individual and a pattern and practice of such discrimination.

102.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

**103.**    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's right**s.**

### Count II
### (LAD – Gender Discrimination)

104.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

105.    The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by engaging in gender discrimination against Plaintiff because she is a female.

106.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

107.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count III
### (LAD – Retaliation)

108.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

109.    The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by retaliating against Plaintiff because Plaintiff made complaints that Plaintiff was discriminated against.

110.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count IV
### (New Jersey Equal Pay Act - Gender Pay Disparity)

111.    Plaintiff realleges and incorporates herein the other paragraphs contained in this Complaint.

112.    The foregoing facts and circumstances demonstrate that Defendants have violated the Gender Pay Disparity/Diane B. Allen Equal Pay Act, N.J.S.A. 34:11-56.13; Amending New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(11) ("New Jersey Equal Pay Act"), by paying a rate of compensation, including benefits, to female employees which is less than the rate paid to male employees for substantially similar work, when viewed as a composite of skill, effort and responsibility.

113.    As a direct and proximate result of the actions of Defendants in violation of the New Jersey Equal Pay Act, Plaintiff estimates that from the date of her hire by Defendants on May 23, 2019 to the date of her termination on December 18, 2019, she has suffered damages of at least $5,831 in lost wages, plus bonuses and other benefits, in addition to penalties due under the New Jersey Equal Pay Act.

114. Plaintiff also estimates that but for the illegal pay disparity based upon her gender, at the time of her termination, she would have been earning a salary of $115,000.

115. In addition, as a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

116. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count V
### (New Jersey Equal Pay Act - Retaliation)

117. Plaintiff realleges and incorporates herein the other paragraphs contained in this Complaint.

118. The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Equal Pay Act, by retaliating against Plaintiff for engaging in activities protected by the New Jersey Equal Pay Act, i.e., gender pay disparity and/or for otherwise exercising her rights under the New Jersey Equal Pay Act.

119. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

120. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VI
### (Equal Pay Act, 29 U.S.C.S. § 206(d))

121.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

122.    The foregoing facts and circumstances demonstrate that Defendants have violated the Equal Pay Act, 29 U.S.C.S. § 206(d).

123.    The foregoing facts and circumstances further demonstrate that Defendants have engaged in a pattern and practice of gender discrimination and pay inequity.

124.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

125.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VII
### (New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.*)

126.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

127.    The actions of Defendants give rise to a violation of the New Jersey Wage Payment Law.

128.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

129.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count VIII**
**(FLSA)**

130.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

131.    The actions of Defendants give rise to a violation of the FLSA.

132.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

154.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

A.    Compensatory damages of not less than $300,000;

B.    Damages for lost wages and benefits, back pay, front pay (or reinstatement);

C.    Damages of at least $5,831, plus treble damages in the amount of $17,493, for underpayment of wages under the New Jersey Equal Pay Act;

D    Damages for humiliation, mental and emotional distress;

E.    Statutory damages, including treble damages, if applicable;

F.    Punitive damages and or liquidated damages where permitted by law;

G.    Attorneys' fees and costs of suit;

H.    Lawful interest - including pre-judgment interest on lost wages;

I.    Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

J.    Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:        August 3, 2020

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff*


By: _____
         **TY HYDERALLY, Esq.**
         *For the Firm*


T:\Davis Philicia\Pleadings\080320.COM.docx

16

# EXHIBIT B

ROSHAN D. SHAH, ESQ. (42302009)
**ANDERSON & SHAH, LLC**
ATTORNEYS AT LAW
1040 Broad Street, Suite 304
Shrewsbury, NJ 07702
Telephone: (732) 398-6545
Facsimile: (732) 576-0027
*Attorneys for Defendants Team Academy Charter School and David Branson*

| | |
|---|---|
| PHILICIA DAVIS, <br><br> PLAINTIFF, <br><br> VS. <br><br> TEAM ACADEMY CHARTER SCHOOL, KIPP NEW JERSEY, DAVID BRANSON, JOHN DOES 1-10, AND XYZ CORP. 1-10, <br><br> DEFENDANTS. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – ESSEX COUNTY <br><br> DOCKET NO.: ESX-L-5173-20 <br><br> **CONSENT TO REMOVAL** |

Defendants Team Academy Charter School and David Branson, by and through their attorneys, hereby consent to the removal of this action from the Essex County Superior Court to the United States District Court for the District of New Jersey, Newark Vicinage.

**ANDERSON & SHAH, LLC**
*Attorneys for Defendants Team Academy Charter School and David Branson*

Dated: October 9, 2020

By: /s/Roshan D. Shah
    Roshan D. Shah, Esq.